**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARRYL PARKMAN, | |
| Plaintiff, | Civil Action No. 21-11309 (ZNQ) (DEA) |
| v. | **OPINION** |
| CHARLES ELLIS, et al. | |
| Defendants. | |

**QURAISHI, District Judge**

Plaintiff Darryl Parkman is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983 and state law. (Compl., ECF No. 1.) The Court has screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether the Court should dismiss it as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit. As set forth below, the Court will dismiss with prejudice Plaintiff's Section 1983 claim against the State of New Jersey and will dismiss without prejudice Plaintiff's Section 1983 claims against the remaining defendants. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

### I.    BACKGROUND

At all relevant times, Plaintiff was a pretrial detainee at the Mercer County Correctional Center ("MCCC") in Lambertville, New Jersey. (*See* Compl.) Plaintiff alleges that he "got extremely sick and ill [on] his second day in [the MCCC]."[1] (*Id.* ¶ 5(a).)

---

[1] The Complaint provides no further details regarding Plaintiff's sickness, including what caused it. Presumably, based on Plaintiff's other allegations discussed below, Plaintiff contracted COVID-19.

Plaintiff alleges that Defendant Nicola Samms, a nurse at the MCCC, "denied my medical emergency" and "mixed my medication up with another inmate with my same name but different jail numbers."[2] (*Id.* ¶ 4(c).)  Plaintiff also alleges that Defendant CFG Health Services, LLC ("CFG Health") "fail[ed] to treat and provide medical and mental health," failed to "answer[] sick call slips in a timely manner," and failed to "provid[e] any information to help keep yourself safe from COVID-19." (*Id.* at 6.)[3]

Plaintiff further alleges that Defendant Charles Ellis, warden of the MCCC, did not adhere to various CDC Guidelines relating to COVID-19, reported false information about COVID-19 numbers in the jail, and refused to respond to Plaintiff's complaints. (*Id.* ¶¶ 4(b), 6.)  Plaintiff contends that Defendant Brian M. Hughes, a member of the Board of Chosen Freeholders, failed to make sure the facility was safe from COVID-19 and managed correctly. (*Id.* at 5.)  Finally, Plaintiff alleges that Defendant Phil Murphy, governor of the State of New Jersey, failed to "mak[e] sure his executive order No. 103 (2020) was directly followed" and "for not briefing the public on the conditions of the [MCCC]." (*Id.* at 6.)

Plaintiff initiated this matter on or around May 17, 2021 by filing a civil rights complaint. (*See* Compl.)  The Court granted Plaintiff's application to proceed *in forma pauperis* and proceeded to screen the Complaint. (*See* May 25, 2021 Order, ECF No. 3.)  However, between June 1, 2021 and November 17, 2021, Plaintiff submitted numerous letters and declarations, which appear to be attempts to amend the Complaint. (*See* ECF Nos. 4–14, 16–20.)  On July 25, 2022, the Court informed Plaintiff that it would not permit him to amend the Complaint in such a

---

[2]  It is not clear as to whether the medical emergency to which the Complaint refers is related to Plaintiff's sickness on his second day at the MCCC, the medication mix-up, or some other event.

[3]  Page pin cites to the Complaint rely on the pagination automatically generated by the CM/ECF.

piecemeal fashion and ordered him to file an all-inclusive proposed amended complaint within thirty days. (*See* July 25, 2022 Order, ECF No. 26.) The order warned that should Plaintiff fail to file an amended complaint within the time allotted, Plaintiff's original complaint would be the operative pleading and the only allegations the Court would screen. (*See id.* at 2.) To date, Plaintiff has failed to file a proposed amended complaint, and so the Court screens only his initial pleading. (*See id.* at 2.)

## II.    **LEGAL STANDARD**

District courts must review complaints in civil actions in which a prisoner or pretrial detainee is proceeding *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to Section 1915(e)(2)(B) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Schreane v. Seana,* 506 F. App'x 120, 122 (3d Cir. 2012). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   **DISCUSSION**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and state law.  (*See* Compl. ¶ 1a.) To succeed on a Section 1983 claim, a plaintiff must allege: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right.  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

Here, the Court construes the complaint as asserting a Fourteenth Amendment inadequate medical care claim against Defendant Samms, related supervisory liability claims against the remaining defendants, and state law claims against all defendants.  However, for the reasons below, the Court concludes that the matter warrants dismissal.

### A.   **Claim Against the State of New Jersey**

As an initial matter, Plaintiff asserts a Section 1983 claim against the State of New Jersey. (*See* Compl. 1.)  Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added).  To be liable under Section 1983, therefore, a defendant must be a "person" within the meaning of the statute.  *See id.*  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, a cause of action under Section 1983 "cannot be asserted against the state, its agencies, or its

4

officials acting in their official capacities." *Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at *6 (D.N.J. Mar. 9, 2009). As the State of New Jersey is not a "person" within the meaning of Section 1983, the Court will dismiss with prejudice Plaintiff's Section 1983 claims against it for failure to state a claim. *See Will*, 491 U.S. at 71.

### B.   Inadequate Care Claim Against Defendant Samms

The Court next addresses Plaintiff's Fourteenth Amendment inadequate medical care claim against Defendant Samms. A pretrial detainee's claim of inadequate medical care arises under the Fourteenth Amendment rather than the Eighth Amendment. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Although the Supreme Court has held that the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," it has not decided whether the Fourteenth Amendment provides greater protections. *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Moreover, the Court of Appeals for the Third Circuit has "found no reason to apply a different standard" for assessing inadequate medical care claims under the Fourteenth Amendment. *Natale*, 318 F.3d at 581–82. Accordingly, the Court assesses Plaintiff's inadequate medical care claims under the standard applicable to Eighth Amendment inadequate medical care claims brought by convicted prisoners. *See id.*

To state a claim of inadequate medical care in violation of the Eighth Amendment, an inmate must generally allege facts showing (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326,

347 (3d Cir. 1987). A court may also determine the seriousness of the inmate's medical need by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with reckless as that term is defined in *criminal* law." *See Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (emphasis added). To be liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). A plaintiff, therefore, must plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.

Here, Plaintiff contends that Defendant Samms "denied my medical emergency" and "mixed my medication up with another inmate." (Compl. ¶ 4(c).) The Court gleans that the medical emergency to which Plaintiff refers is his extreme illness, presumably from Covid-19, that he incurred on his second day at the MCCC. (*See id.*) On this point, Plaintiff fails to plead sufficient facts about the nature of his medical emergency to make his claim plausible. *See Iqbal*, 556 U.S. at 678. Similarly, Plaintiff fails to plead sufficient facts regarding the circumstances of the alleged denial of his medical emergency from which the Court could infer that Defendant Samms knew that Plaintiff was extremely sick, had Covid-19, or otherwise knew of a substantial risk of serious harm to Plaintiff and disregarded that risk. *See Farmer*, 511 U.S. at 836–37. As to Plaintiff's allegation that Defendant Samms mixed up his medication with another inmate, without more, the allegation amounts to mere negligence, which is not actionable under Section 1983. *See Caldwell v. Beard*, 324 F. App'x 186, 188 (3d Cir. 2009). Accordingly, the Court dismisses

6

without prejudice Plaintiff's Section 1983 claim against Defendant Samms for failure to state a claim.

### C. Supervisor Liability Claims Against Defendants Ellis, Murphy, and Hughes

Next, the Court addresses Plaintiff's related supervisor liability claims against Defendants Ellis, Murphy, and Hughes. Section 1983 liability requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights . . . ." *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976). In other words, to establish Section 1983 liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Notwithstanding these principles, a plaintiff may establish a supervisor or policymaker's liability under § 1983 by showing: (1) an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) the supervisor's participation in the violation of the plaintiff's rights, direction of others to violate the plaintiff's rights, knowledge of and acquiescing to a subordinate's conduct. *Doe v. N.J. Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

To establish a supervisor or policymaker's liability based on the failure to employ a policy or practice, a plaintiff must identify a specific policy or practice that the supervisor failed to employ and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy in effect created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the

constitutional injury was caused by the failure to implement a specific practice or procedure. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[P]erhaps the easiest way [ ] a plaintiff can make out a supervisor liability claim is by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

Here, the Complaint contains no facts showing that Defendants Ellis, Murphy, or Hughes directly participated in or directed others to violate Plaintiff's constitutional rights. (*See* Compl.) The Complaint is also devoid of facts showing that these Defendants knew that their subordinates violated Plaintiff's rights and acquiesced to it. (*See id.*) To the extent Plaintiff attempts to assert a policy-based claim against Defendants Ellis, Murphy, or Hughes, the Complaint fails to plead sufficient facts for the Court to reasonably infer that any of these Defendants were aware that their policies created an unreasonable risk of a constitutional violation. *See Sample*, 885 F.2d at 1118. Moreover, as noted above, the Complaint contains insufficient facts about the nature of Plaintiff's medical emergency such that the Court could reasonably infer that his alleged constitutional injury was caused by the failure to implement a specific practice or procedure. *See id.* Accordingly, the Court will dismiss without prejudice Plaintiff's Section 1983 claims against Defendants Ellis, Murphy, or Hughes for failure to state a claim.

**D.     Supervisor Liability Claims Against CFG Health**

The Court now turns to Plaintiff's Section 1983 claims against CFG Health. A corporation or other similar business entity can only be liable under Section 1983 for the violation of a prisoner's constitutional rights if the violation was caused by a corporate policy or custom. *See Natale*, 318 F.3d at 582.   Thus, to state a claim against CFG Health, Plaintiff must plead facts

8

showing that this entity had a relevant policy or custom and that the policy or custom violated his constitutional rights. *See id.*

Here, the Complaint lacks any well-pleaded allegations identifying a relevant corporate policy or custom that violated his constitutional rights. Plaintiff merely alleges that CFG Health had "numerous health and safety violations, failed to treat and provide medical and mental health to [him], [does] not answer[] sick call slips in a timely manner, [does] not provide any information to help keep yourself safe from Covid-19." (Compl. at 6.) Plaintiff also alleges that he "had to get [his] family to call [the] jail and get [a] social worker to e-mail [the] medical dept[ment] just to be seen." (*Id.* at 7.) To the extent that Plaintiff attempts to assert a claim based on a corporate custom of failing to treat inmates or failing to respond to sick calls, the Complaint lacks sufficient facts about the alleged custom or the nature of his medical emergency to make his claim plausible. *Iqbal*, 556 U.S. at 678. Accordingly, the Court dismisses without prejudice Plaintiff's Section 1983 claims against CFG Health for failure to state a claim.

E.      **Remaining State Law Claims**

The Court further construes the Complaint as asserting state law claims for negligence and/or medical malpractice. However, as this Court has determined that it will dismiss all claims for which it has original jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

The potential basis for the Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998).

Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where courts dismiss federal claims at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court has determined that it will dismiss all of Plaintiff's claims for which it has original jurisdiction, *i.e.*, Plaintiff's federal claims under Section 1983. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.    **CONCLUSION**

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's Section 1983 claims against the State of New Jersey and will dismiss without prejudice Plaintiff's Section 1983 claims against the remaining defendants. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. An appropriate Order follows.

Date: December 5, 2023

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE

10